Filed 6/8/26  In re Ro.H. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Ro.H., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                  v.<br><br>Re.H.,<br><br>        Defendant and Appellant. | G066295<br><br>(Super. Ct. No. 25DP0042)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, June Jee An, Judge. Affirmed.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\* \* \*

Re.H. (mother) appeals from a custody order concerning her nine-year-old daughter Ro.H. (minor)[1] issued at the close of dependency proceedings pursuant to Welfare and Institutions Code section 362.4.[2] The juvenile court granted N.H. (father) sole physical custody and tiebreaking authority within the parents' joint legal custody, and ordered mother to have supervised visitation. Mother claims this was error. We find no abuse of the court's discretion and affirm the order.

FACTUAL BACKGROUND[3]

I.

DETENTION

Orange County Social Services Agency (SSA) removed minor and her siblings from their parents in January 2025 after receiving substantiated allegations of general neglect, emotional abuse, and risk to the siblings. The parents were allegedly aware minor's siblings had been experiencing mental

---

[1] While this appeal concerns only minor, we reference her two siblings, L.H. and J.H., throughout the opinion.

[2] All further statutory references are to the Welfare and Institutions Code.

[3] Our factual summary is limited to those facts relevant to the issues presented in this appeal.

health issues, including suicidal ideation, past suicide attempts, and self-harming, but had neglected to follow up with medications and therapist appointments.

At the time of detention, the parents shared custody of the children. Per the custody order, mother had 40 percent custody, and father had the children every other weekend and every other Wednesday. The parents, however, would alternate custody with the children weekly. Overall, the custody situation was contentious.

In its detention report, SSA noted father seemingly had issues with alcohol use. Additionally, mother had mental health issues and had attempted suicide. According to father, mother repeatedly spoke negatively about him to the children, even though the courts and mental health professionals had warned the parents about the negative effect this could have on children. Mother also told the children they could legally refuse to go with father without getting into trouble.

SSA interviewed both of minor's sibling's therapists about the family. Both siblings had expressed concerns about father's drinking, although one sibling did not bring up any concerning behavior father exhibited while drinking. Both therapists explained father was available to his children, concerned for them, and empathetic towards them. One therapist described him as organized and involved with the children. Overall, there were no concerns about father's parenting behaviors. On the other hand, mother had obsessive or enmeshed relationships with the children. She was disorganized and unstable, would lose focus during sessions, and would become aggressive towards the therapist. Mother had threatened to terminate all J.H.'s medical providers and find new ones. She also punched a wall during an argument with father in front of L.H. Mother would bring up

the past, become adamant that the children were sick or had medical issues, and make her own diagnosis even when the therapist saw no signs or symptoms of the diagnosis. Additionally, mother would express "'concerns out of the blue.'" For example, mother was concerned L.H. had been sexually abused because she changed her clothing style from "girly to tomboy." Thus, the therapists believed the children would be safer with father rather than with mother.

SSA also interviewed minor's therapist. Minor began to see her because she was experiencing anxiety after the parents separated and began having custody issues. Minor had a difficult time when she could not see mother after mother's suicide attempt. The therapist reported father would provide a more stable environment for minor than mother because mother would "stir things up."

II.

JURISDICTION AND DISPOSITION

SSA filed a jurisdiction and disposition report in February 2025. At the time, minor denied seeing father act out of character, belligerent, or aggressive. Father would consume alcohol but would act normal. While she was worried about the constant verbal arguing between the parents, minor wanted to continue visiting with them.

When SSA interviewed the parents, mother admitted she had diagnosed L.H. with a mental health disorder. However, mother claimed the therapist was not credentialed to identify some of the disorders. Additionally, mother alleged J.H. had attempted suicide because of daily verbal and physical abuse. According to father, mother would doctor shop to ensure J.H. was diagnosed as mother wanted. Moreover, mother was coaching the children and alienating them from father. Father also alleged mother was

4

upset the juvenile court had granted him full medical consent over the children and allowed him to "overwrite" mother when it came to medical needs or medical disagreements.

The juvenile court sustained an amended petition in February 2025. The sustained petition detailed that minor was at risk of harm based on the parents' contentious relationship, minor's mental health issues, and mother's perceptions of the children's well-being.[4]

In its first March 2025 addendum report, SSA recommended mother's visitation be restricted to monitored. The maternal grandmother reported she had found a handwritten note from mother in J.H.'s belongings. The note listed "things outside your control" including numerous genetic disorders, "family history of mental health," and a list of specific mental health disorders. The maternal grandmother believed the note triggered J.H.'s emotional distress. Mother also continued to tell the children about their alleged diagnoses. Additionally, mother had reported to SSA that J.H. had been assaulted during a recent hospitalization, and this assault caused J.H. to faint. The contact at the hospital denied this assault took place. Mother also told SSA that J.H. should not be placed with paternal grandmother because she "was in a Satanic Cult" and "'had given birth to hundreds of babies before the age of 16.'" She also alleged paternal grandmother's parents had "'sacrificed to Satan in ritual murder.'"

In the same March 2025 report, SSA reported father had found an email from mother to J.H's doctor asking if J.H. could have a specific medical condition. Father believed mother was seeking out doctors to

---

[4] The juvenile court also sustained allegations regarding minor's siblings.

diagnose J.H. with a medical condition. During this time, minor's visits with father were going well. Maternal grandmother reported minor was happy to see father and happy after the visits. Based on this report, the juvenile court followed SSA's recommendation and ordered minor be released to father's care and monitored visitation for mother. The court also ordered mother not to make medical appointments, make recommendations, or seek direct treatment with the children's medical providers. Additionally, the court ordered mother not to discuss medical conditions, diagnosis, or symptoms with the children.

In its second March 2025 addendum report, SSA noted father had reached out to express concern over an interaction between mother and minor. Mother had been telling minor she had allergy issues like mother and needed to take an allergy pill before playing sports. After the game, mother stopped minor and pointed to, then touched minor's face. When father spoke to minor a minute later, minor said "'Oh, my face is so red, my face is so red!'" Father also discovered mother had told maternal grandmother to give minor an allergy pill before the game. Maternal grandmother refused and explained to mother that face flushing is normal. Father reported mother had been saying minor had allergies and needed medication. Father was concerned about this interaction because he believed mother would continue to diagnose the children and tell them they are sick even when supervised.

In the same second addendum report, SSA reported on an interview with minor. Minor felt safe living with father but would like to live part time with both parents. She described her visits with mother as "good" and claimed mother did not talk about father.

At the April 2025 hearing, the juvenile court determined custody with mother would be detrimental. The court granted enhancement services to mother and ordered she undergo an Evidence Code section 730 evaluation.

III.

FAMILY MAINTENANCE

SSA filed a status review report in September 2025. At the time, minor continued to live with father. Minor reported she felt happy and calm all the time. Minor's therapist reported minor had no major symptoms and was able to adjust well to her living situation. Mother reported to SSA that she had learned how to be understanding and patient with minor. Moreover, she shared she did not force or pressure her relationship with minor and gave her space when she needed it. Mother also stated she learned not to talk badly about father to minor. Mother's therapist reported mother was open, honest, and willing to comply with juvenile court orders. As for visitation, mother continued to have monitored visitation with minor, and the visits were going well. During the visits, mother would not bring up medical topics. Father had complied with his case plan and learned not to speak negatively about the mother to the children. Father also continued to seek therapy and make time for self-care. Father's therapist reported father was making positive progress. Minor was doing well in father's care.

SSA filed an addendum report in October 2025, recommending the dependency proceedings be terminated with exit orders. Minor continued to have positive visitation with mother and felt safe in her care. Later that month, SSA filed a second addendum report. Minor reported her visits with mother were still going well. SSA reported mother had sent father's therapist a long text message where she seemingly tried to manipulate and sway the therapist into thinking critically of father. In the message, mother stated she

7

had never spoken negatively about father to the children. She accused father of never taking responsibility, apologizing, or admitting he was wrong. She also claimed he "would twist the narrative" during marriage therapy and leave out information so he would not look bad. Mother also accused father of defaming her, lying under oath, making false accusations, and falsely accusing mother of having Munchausen's by proxy. She further claimed father refused to take the children to doctors or therapists to address their mental health issues.

## IV.

### TERMINATION

The juvenile court terminated jurisdiction over minor in November 2025. In the exit order, the court granted father sole physical custody, and the parents joint legal custody with tie-breaking authority to father should the parents disagree about any medical, dental, or spiritual decision. The court also ordered mother to have supervised visitation with minor up to 10 hours a week on Fridays from 4:00 p.m. to 7:00 p.m. and Saturday from 2:00 p.m. to 7:00 p.m. If minor's siblings had their visits liberalized to unsupervised, minor was allowed to participate in those visits up to four hours per week. Her siblings were to be present at those visits. While mother was allowed to attend minor's extracurricular activities, she was to do so as an observer only. Mother could not contact minor during the activities and, if minor initiated contact, mother was to redirect her. Mother was prohibited from discussing medical issues, conditions, or treatments with minor during visitation, even if minor asked about them.

Mother timely appealed.

8

DISCUSSION

I.

APPLICABLE LAW

When terminating its jurisdiction over a child who has been declared a dependent child of the court, the juvenile court may issue "an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a).) The orders remain in effect until modified or terminated by a subsequent order in the family court. (*In re T.S.* (2020) 52 Cal.App.5th 503, 513 (*T.S.*).)

When making an order under section 362.4, "'the court's focus and primary consideration must always be the best interests of the child.'" (*T.S.*, *supra*, 52 Cal.App.5th at p. 513.) Thus, certain statutory presumptions in the Family Code do not apply. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711.)

II.

STANDARD OF REVIEW

We review a juvenile court's custody and visitation order for an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) A reviewing court should not disturb a custody determination in a dependency proceeding ""unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."" (*Ibid.*) ""When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."" (*Id.* at p. 319.)

An abuse of discretion may arise if the juvenile court bases its decision on impermissible factors or an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

9

## III.

### ANALYSIS

*A. Custody*

First, mother argues the juvenile court abused its discretion by ordering father to have sole physical custody of minor. SSA contends mother forfeited this challenge by failing to request physical custody or object to the exit order. We agree with SSA.

Reviewing courts "ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*).) This forfeiture rule is meant to "encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid.*) The rule applies in dependency cases, and "the failure to object to a disposition order on a specific ground generally forfeits a parent's right to pursue that issue on appeal." (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 345; see *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1127 ["[F]orfeiture generally applies when a party did not alert the juvenile court that he or she objected to an order being made or when a party failed to ask in the juvenile court for relief being sought on appeal."].) Although application of the forfeiture rule is not automatic, a reviewing court should exercise its discretion to excuse forfeiture "rarely and only in cases presenting an important legal issue." (*S.B.*, at p. 1293; see *Anthony Q.,* at p. 345 ["Although the forfeiture doctrine applies in dependency cases . . . [citations], when the appeal involves an important and purely legal issue subject to our independent review . . . , we have discretion to entertain the challenge to the juvenile court's order notwithstanding the parent's failure to object on that basis in the juvenile court"].)

10

Mother concedes she did not request joint physical custody or object to the exit order. She argues she did not do so because, based on off-record discussions, such a request would have been futile. The record does not support this contention. The reference to the "off the record" discussion mother cites indicates the discussions pertained to visitation. Thus, we determine mother forfeited her challenge to the portion of the exit order granting father sole physical custody.

*B. Visitation*

Second, mother argues the juvenile court abused its discretion when it ordered supervised visitation because the court improperly delegated its authority over visitation orders. The record does not support this argument.

"'The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. [Citation.] This rule of nondelegation applies to exit orders issued when dependency jurisdiction is terminated.'" (*In re A.C.* (2011) 197 Cal.App.4th 796, 799.) Although a juvenile court may delegate to a third party the responsibility to manage the details of visitation, such as the time, place and manner of visits (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374–1376), a visitation order that actually or effectively allows a third party (including a parent) to decide whether visitation occurs at all is impermissible because it erroneously delegates the *judicial* power to set visitation. (*In re Armando L.* (2016) 1 Cal.App.5th 606, 616; *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314; *In re S.H.* (2003) 111 Cal.App.4th 310, 317–319.)

Mother relies on *In re T.H.* (2010) 190 Cal.App.4th 1119 for the proposition that the juvenile court delegated its authority over visitation

11

orders to a third party. In *T.H.*, the court's exit order provided visitation for the noncustodial parent "only upon the 'agreement of the parents[,]'" "effectively delegat[ing] to [the custodial parent] the power to determine whether visitation w[ould] occur at all." (*Id.* at p. 1123.) The court's abuse of discretion in that case was "framing its order in a way that gave [the custodial parent] an effective veto power over" the noncustodial parent's visitation rights. (*Id.* at p. 1124.) Here, mother contends SSA and the court weighed heavily on father's opinion of her visitation. By doing so, mother contends the court gave father authority to determine whether visitation occurs. The record, however, clearly identifies mother's visitation schedule. The schedule does not provide any veto authority to father. Similarly, mother contends the court effectively delegated visitation to a third party when it made mother's visits with minor contingent on her success with her visits with minor's siblings. The contingent visitation schedule is a step-up plan intended to provide mother with additional visits with minor. The limitations of those visits are also clearly defined by the order. Because mother has not shown the exit order allows father or a third-party to curtail her visitation rights, the court did not abuse its discretion.

## C.  *Tie-Breaking Authority*

Third, mother contends the juvenile court erroneously ordered father to have tie-breaking authority. In making this decision, mother contends the court overlooked father's disparaging remarks about mother and "inattention to the older siblings' mental health issues." Additionally, mother contends the court overlooked her "inability" to help the older siblings' mental health issues due to the family court order limiting her medical decision-making.

12

We conclude the juvenile court could reasonably have found the order to be in minor's best interest. Contrary to mother's argument, the fact the parents had difficulty coparenting tends to support an order granting one parent tie-breaking authority. When parents who share joint legal custody cannot coparent, decisions cannot be made. Decisions ranging from medical care, what school to go to, and even what sports to play, get delayed or end in a stand-off. Moreover, it is often reasonable to award tie-breaking authority to the parent who is the primary custodial parent; here, that parent is father. It would make little sense to award mother tie-breaking authority when minor lived with father full-time and spent 10 hours a week with mother. We find no abuse of discretion.

As stated previously, these orders remain subject to modification. If circumstances change, either parent can file a request in family court to modify this order.

DISPOSITION

The juvenile court's order is affirmed.

DELANEY, ACTING P. J.

WE CONCUR:

SCOTT, J.

GOODING, J.

13